IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL CASE NO. 1:25-cv-462

| | |
|---|---|
| UNIVERSITY OF NORTH CAROLINA HEALTH CARE SYSTEM; UNIVERSITY OF NORTH CAROLINA HOSPITALS AT CHAPEL HILL; JOHNSTON HEALTH SERVICES CORPORATION, A/K/A JOHNSTON MEMORIAL HOSPITAL AUTHORITY; NASH HOSPITALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HUMANA HEALTH PLAN, INC.; HUMANA INSURANCE COMPANY; and HEALTH VALUE MANAGEMENT, INC. D/B/A CHOICECARE NETWORK, <br><br> Defendants. | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Humana Health Plan, Inc., Humana Insurance Company, and Health Value Management, Inc. d/b/a ChoiceCare Network (collectively, "Defendants"), file this motion to dismiss all of the claims of Plaintiffs University of North Carolina Health Care System, University of North Carolina Hospitals at Chapel Hill, Johnston Health Services Corporation, a/k/a Johnston

Memorial Hospital Authority, and Nash Hospitals, Inc.'s (collectively, "Plaintiffs"). Defendants respectfully show the Court as follows:

## INTRODUCTION

Each of the Plaintiffs in this action is a party to a "Hospital Participation Agreement" (collectively, the "Agreements") with one of more of the Defendants. These Agreements include, *inter alia*, provisions under which Defendants must reimburse Plaintiffs for certain drugs that Plaintiffs provide under the federal 340B Program to members of Medicare Advantage plans administered by Defendants.

Years after they received proper payments from Defendants for services under the Agreements, Plaintiffs complain that Defendants failed to adopt and retroactively apply certain rate changes later implemented by the Centers for Medicare & Medicaid Services ("CMS"). While Plaintiffs allege generally that the rate of reimbursement for the claims at issue is set by the Agreements, Plaintiffs do not identify any specific provisions of the Agreements that would require that Defendants adopt retroactive rate changes and apply them to payments already made. Plaintiffs have therefore failed to put Defendants on notice of a plausible claim for breach of contract, thus warranting dismissal of that claim. Additionally, Plaintiffs' second and third claims for specific performance and declaratory judgment are merely duplicative of their breach of contract claim and, consequently, are not cognizable. The Court should therefore dismiss the Complaint in its entirety.

## FACTUAL BACKGROUND

Defendants administer Medicare benefits to individuals who have elected to enroll

2

in Medicare Advantage Plans. Compl. (Doc. 1) ¶¶ 17–19. Plaintiffs provide health care services to those individuals pursuant to the Agreements with Defendants. Compl. (Doc. 1) ¶ 20. The Complaint alleges that under the Agreements, Defendants are required to reimburse Plaintiffs for outpatient services as a percentage of the rate required to be paid under the Medicare program. Compl. (Doc. 1) ¶ 26. Included among those services are drugs purchased under Medicare's "340B Program"—shorthand for Section 340B of the Public Health Service Act, which allows participating hospitals and other providers to purchase covered drugs from manufacturers at discounted prices—which the Agreements require be reimbursed at a rate determined by CMS based on average sales price ("ASP"). Compl. (Doc. 1) ¶¶ 24–25.

In 2017, CMS issued a rule requiring claims from hospitals participating in the 340B Program to be reimbursed at a rate of the average sales prices of the drugs minus 22.5% (ASP -22.5%) (hereinafter, the "CMS Discount Rule"). *See* Centers for Medicare & Medicaid Services, *Remedy for the 340B-Acquired Drug Payment Policy for Calendar Years 2018-2022 Final Rule (CMS 1793-F)* (Nov. 2, 2023), https://www.cms.gov/newsroom/fact-sheets/hospital-outpatient-prospective-payment-system-opps-remedy-340b-acquired-drug-payment-policy (hereinafter, the "CMS Fact Sheet").[1] This was a departure from the previous rule, which required the claims to be

---

[1] The Court may take judicial notice of the CMS Fact Sheet when considering this Rule 12(b)(6) motion because the CMS Fact Sheet is a public press release issued by the United States government. *See Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 363 (M.D.N.C. 2022) (recognizing that "[c]ourts can take judicial notice of facts from

reimbursed at the average sales price plus 6% (ASP +6%). *See generally* CMS Fact Sheet; *see also* Compl. (Doc. 1) ¶¶ 27–30. The CMS Discount Rule was in effect from 2018 to 2022. *See generally* CMS Fact Sheet; *see also* Compl. (Doc. 1) ¶ 22.

On June 15, 2022, the United States Supreme Court held that CMS did not properly follow the rulemaking process and thus the rule setting the reimbursement rate was not authorized. *See Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 142 S. Ct. 1896 (2022). As a result of that decision, CMS prospectively reversed the reimbursement rate for 340B drugs to ASP plus 6%, effective 2023, and issued lump sum payments to hospitals participating under the traditional Medicare program. 88 Fed. Reg. 77150 at 77156–57. Importantly, however, CMS recognized that it could not interfere in the payment rates that MAOs (like Defendants) set in contracts with providers and facilities and declined to require that MAOs issue any payments to their contracted providers. 88 Fed. Reg. 77150 at 77184.

Plaintiffs now bring a breach of contract claim, alleging that Defendants should have retroactively adopted the CMS rate adjustments for claims administered from 2018 to 2022 for 340B drugs only and demand retroactive reimbursement for those years at the 2023 revised rates, rather than the rates in effect at the time payment was made. Compl. (Doc. 1) ¶¶ 34–35. The Complaint, however, does not indicate what provision of the Agreements would require such a retroactive payment. Along with their breach of contract claim,

---

public records without converting the motion to dismiss into one for summary judgment"); *Azima v. Del Rosso*, 2021 WL 5861282, at *2 (M.D.N.C. Dec. 10, 2021) (noting that the rule has been "repeatedly applied by courts in this circuit").

4

Case 1:25-cv-00462-TDS-JLW   Document 11   Filed 08/06/25   Page 4 of 12

Plaintiffs include claims for specific performance (even though the Complaint admits that money damages are an adequate remedy at law) and declaratory judgment (even though that claim is duplicative of the breach of contract claim and there is no prospect of future recurrence of the breach alleged).

## LEGAL STANDARD

The Federal Rules of Civil Procedure mandate that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The grounds for relief must be "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint may fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) in two ways: first, by failing to state a valid legal cause of action, i.e., a cognizable claim; or second, by failing to allege sufficient facts to support a legal cause of action. *Walker v. Petsense LLC*, No. 1:20CV738, 2021 WL 1227064, at *2 (M.D.N.C. Mar. 31, 2021) (citing *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013)).

# ARGUMENT

## I. The Complaint fails to state a claim for breach of contract, because it does not identify which contractual provision was breached.

To allege a breach of contract under North Carolina law, "a complaint must allege facts sufficient to prove that (1) there was a valid contract between the parties and (2) that the defendant breached the terms of that contract." *Superior Performers, LLC v. Carey*, 716 F. Supp. 3d 373, 378 (M.D.N.C. 2024). To state a plausible claim for breach of contract, a plaintiff must specify which contractual obligations were breached. *See ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 215 (4th Cir. 2019) ("The allegations do not specify what contractual obligation was breached. Neither do they refer to any underlying facts to support the purported breach. Thus, the complaint is not pled with enough specificity to plausibly state a claim for breach of the Forbearance Agreement.").[2]

In *Guessford v. Pennsylvania Natonal Mutual Casualty Insurance Co.*, 918 F. Supp. 2d 453, 462 (M.D.N.C. 2013), for example, the Court dismissed a breach of contract claim where the Complaint "fail[ed] to identify any specific provision of the insurance contract

---

[2] *See also Kasparov, Pte Ltd. v. Zacherl*, 729 F. Supp. 3d 524, 532 (E.D.N.C. 2024) (dismissing breach of contract claim for failure to "cite specific provisions" concerning the alleged breaches); *Ruff v. Allianz Life Ins. Co. of N. Am.*, No. 6:19-cv-1709-Orl-78DCI, 2020 WL 8918198, at *3 (M.D. Fla. July 9, 2020) ("When a plaintiff fails to identify which contract provision was breached, it constitutes a 'defendant unlawfully harmed me' accusation, impermissible under Rule 8, *Iqbal*, and *Twombly*." (citation omitted)); *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) ("We agree that this was insufficient to state a claim because Bass has not alleged any general or specific provision of any contract that Fidelity might have breached."); *Anderson v. Branch Banking & Tr. Co.*, 56 F. Supp. 3d 1345, 1353 (S.D. Fla. 2014) ("This Court has dismissed claims for breach of contract where it is unclear what provision or obligation under the contract has been violated.").

that was breached by Defendant's conduct" and "Plaintiff point[ed] to no provision in the contract requiring Defendant to [fulfill the duty Plaintiff claimed was owed]."

Here, Plaintiffs' failure to identify the specific provisions—including the provisions relating to the "rates agreed to in the Agreement"—allegedly breached by Defendants amounts to a failure to plead sufficient facts to state a claim under Rule 12(b)(6). Importantly, Plaintiffs have failed to identify any provision in the Agreements that could require Defendants to retroactively reimburse Plaintiffs for additional fees other than what was due at the time of payment. Without knowing the specific provisions in these complex Medicare agreements that Plaintiffs believe are at issue, Defendants and the Court are deprived of the ability to analyze whether a "breach" actually occurred in the context of CMS's directives regarding the CMS Discount Rule, when and how the Agreements required application of the CMS Discount Rule, and how CMS's remedies impact Plaintiffs' remedies under the Agreements. Consequently, the breach of contract claim should be dismissed for failure to state a plausible claim for which relief could be granted.

## II. The Complaint fails to state a claim for specific performance.

Plaintiffs' specific performance claim (Count II) asserts that "Defendant failed to pay all amounts due Plaintiff under the Agreements, thereby breaching the Agreements and Plaintiff is thus entitled to specific performance of those underpayments." Compl. (Doc. 1) ¶ 43. The Complaint itself makes clear that a specific performance claim or remedy is not appropriate here. Under North Carolina law, the "equitable remedy of specific enforcement of a contract is available only when the plaintiff can establish that an adequate remedy at

7

law does not exist." *Moore v. Moore*, 297 N.C. 14, 16, 252 S.E.2d 735, 737 (1979) (citation omitted), *overruled on other grounds by Marks v. Marks*, 316 N.C. 447, 342 S.E.2d 859 (1986). Because Plaintiffs concede an adequate remedy at law exists through their claim for breach of contract, specific performance is facially inappropriate here.

Courts consider several factors when determining whether there is an adequate remedy at law, including "(1) the difficulty and uncertainty in determining the amount of damages to be awarded for the breach, (2) difficulty and uncertainty of collecting such damages after they are awarded, and (3) the insufficiency of money damages to obtain duplicate or substantial equivalence of the promised performance." *Whalehead Props. v. Coastland Corp.*, 299 N.C. 270, 283, 261 S.E.2d 899, 908 (1980). "North Carolina courts typically deem a damages award inadequate only in contracts to convey real property, transactions involving objects that are unique or difficult to value, and disputes involving divorce and child custody" and not in services contracts. *UBA, LLC v. Thyssenkrupp Elevator Corp.*, No. 5:15-CV-477-FL, 2017 WL 544586, at *6 (E.D.N.C. Feb. 9, 2017) (collecting cases, internal citations omitted).

If Defendants did breach the Agreements, the Complaint reveals that monetary damages would sufficiently compensate Plaintiffs. Indeed, the Complaint seeks money damages, and the specific performance claim seeks only to compel Defendants to pay Plaintiffs the same amounts. *See* Compl. (Doc. 1) ¶ 35 ("Defendant therefore owes Plaintiff the difference between the amount that Defendant has paid Plaintiff for services rendered to Defendant's Medicare Advantage members and the amounts Defendant is contractually

8

obligated to pay Plaintiff for such payments and services"); Compl. (Doc. 1) ¶ 43 (Count 2) ("Defendant failed to pay all amounts due Plaintiff under the Agreement, thereby breaching the Agreement, and Plaintiff is thus entitled to specific performance of those underpayments"). This makes specific performance inappropriate here. *Williams v. Habul*, 219 N.C. App. 281, 290–91, 724 S.E.2d 104, 111 (2012) (denying a claim for specific performance that sought payment of money, including because "we construe the substance of Plaintiff's argument as a request for damages, not specific performance."). Consequently, Plaintiffs' second claim for specific performance should be dismissed.

**III.     The Complaint fails to state a claim for declaratory judgment.**

The Complaint's declaratory judgment claim seeks a declaration "requiring Defendant to reimburse Plaintiff at the rates provided in the Agreement." *See* Compl. (Doc. 1) ¶ 47. This claim is merely duplicative of the breach of contract claim and otherwise serves no purpose.

Under North Carolina law, where a claim for declaratory judgment simply serves to enforce contract terms, it serves no purpose and should be dismissed. "[C]ourts have repeatedly recognized that a declaratory judgment serves no 'useful purpose' when it seeks only to adjudicate an already-existing breach of contract claim." *Moses H. Cone Mem'l Hosp. Operating Corp. v. Springfield Serv. Corp.*, No. 1:13CV651, 2014 WL 12935967, at *3 (M.D.N.C. July 18, 2014) (citation omitted), *report and recommendation adopted*, No. 1:13CV651, 2014 WL 12935968 (M.D.N.C. Sept. 11, 2014).

Further, declaratory judgment claims are especially inappropriate where there is no prospect that the allegedly wrongful conduct will be repeated. Here, Defendants have made the rate adjustment at issue and applied it prospectively. The parties differ only on whether that adjustment should also have applied retroactively to a finite set of claims occurring only in the past. Consequently, there is no chance of any ongoing harm to Plaintiffs, even assuming their theory of the case is correct. Where there is no "useful purpose in clarifying and settling the legal relations at issue" moving forward, declaratory judgments should not issue. *Calabria v. N.C. State Bd. of Elections*, 198 N.C. App. 550, 554, 680 S.E.2d 738, 743 (2009) (citation omitted); *see also Johnson v. Cricket Council USA, Inc.*, 658 F. Supp. 3d 276, 282 (E.D.N.C. 2023) (collecting cases and holding that "declaratory relief is inappropriate because the dispute does not require the court to clarify the parties' ongoing relationship. The alleged breach of contract already occurred, and the dispute concerns the alleged breach and damages. Thus, the court dismisses Johnson's request for declaratory relief."); *Port City Logistics, Inc. v. Chasewater Logistics, LLC*, No. 3:23-CV-541-RJC-DCK, 2024 WL 3841527, at *6 (W.D.N.C. July 18, 2024), *report and recommendation adopted*, No. 3:23-CV-00541-RJC-DCK, 2024 WL 3837894 (W.D.N.C. Aug. 15, 2024) ("[W]here a claim for declaratory judgment will be resolved by one of the claimant's other claims, ***and*** all of the relevant conduct has occurred in the past, a declaratory judgment is especially inappropriate"). Given there is no likelihood that the alleged breach will recur, Plaintiffs' third claim for declaratory judgement should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Dismiss and dismiss all of Plaintiffs' claims.

Respectfully submitted this the 6th day of August, 2025.

By: */s/ Bradley A. Roehrenbeck*
Chad D. Hansen (NC Bar No. 32713)
Bradley A. Roehrenbeck (N.C. Bar No. 34180)
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
chadhansen@ktslaw.com
broehrenbeck@ktslaw.com@ktslaw.com

*Attorneys for Defendants Humana Health Plan, Inc., Humana Insurance Company, and Health Value Management, Inc. d/b/a ChoiceCare Network.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This the 6th day of August, 2025.

By: */s/ Bradley A. Roehrenbeck*
Chad D. Hansen (NC Bar No. 32713)
Bradley A. Roehrenbeck (N.C. Bar No. 34180)
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
chadhansen@ktslaw.com
broehrenbeck@ktslaw.com

*Attorneys for Defendants Humana Health Plan, Inc., Humana Insurance Company, and Health Value Management, Inc. d/b/a ChoiceCare Network.*