IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL CASE NO. 1:25-cv-462

| | |
|---|---|
| UNIVERSITY OF NORTH CAROLINA HEALTH CARE SYSTEM; UNIVERSITY OF NORTH CAROLINA HOSPITALS AT CHAPEL HILL; JOHNSTON HEALTH SERVICES CORPORATION, A/K/A JOHNSTON MEMORIAL HOSPITAL AUTHORITY; NASH HOSPITALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HUMANA HEALTH PLAN, INC.; HUMANA INSURANCE COMPANY; and HEALTH VALUE MANAGEMENT, INC. D/B/A CHOICECARE NETWORK, <br><br> Defendants. | **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES** |

Defendants Humana Health Plan, Inc., Humana Insurance Company, and Health Value Management, Inc. d/b/a ChoiceCare Network ("Defendants") answer University of North Carolina Health Care System; University of North Carolina Hospitals at Chapel Hill; Johnston Health Services Corporation, a/k/a Johnston Memorial Hospital Authority; and Nash Hospitals, Inc.'s ("Plaintiffs") Complaint as follows:

**PARTIES**

1.      Plaintiff UNC Health is a statutory entity created pursuant to N.C. Gen. Stat. § 116-350.5 and is a State agency and political subdivision governed and administered as

an affiliate enterprise of The University of North Carolina. Among other functions, UNC Health owns, operates, and manages hospital systems, individual hospitals, and related services across the State of North Carolina.

> **ANSWER**: Defendants are without knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint and, therefore, deny those allegations.

2. Plaintiff UNC Health is comprised of a number of affiliate hospital systems and hospitals, including:

> a. Plaintiff UNC Hospitals, which is a component unit of Plaintiff UNC Health. UNC Hospitals owns and operates a hospital system and related services in and around Orange County, North Carolina.
>
> b. Plaintiff UNC Health Johnston, which UNC Health manages. UNC Health Johnston owns and operates a hospital system and related services in and around Johnston County, North Carolina.
>
> c. Plaintiff UNC Health Nash, which UNC Health manages. UNC Health Nash owns and operates a hospital system and related services in and around Nash County, North Carolina.

> **ANSWER**: Defendants are without knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint and, therefore, deny those allegations.

3. On information and belief, Defendant Humana Health Plan, Inc. is a Kentucky corporation and is in the business of health care insurance.

   **ANSWER**: Defendants admit that Defendant Humana Health Plan, Inc. is a Kentucky corporation. Defendants deny the remaining allegations in Paragraph 5 of the Complaint.

4. On information and belief, Defendant Humana Insurance Company is a Delaware corporation and is in the business of health care insurance.

   **ANSWER**: Defendants deny the allegations in Paragraph 4 of the Complaint.

5. On information and belief, Defendant Health Value Management, Inc. d/b/a ChoiceCare Network is a Delaware corporation and is in the business of health care insurance.

   **ANSWER**: Defendants admit that Defendant Health Value Management, Inc. d/b/a ChoiceCare Network is a Delaware corporation. Defendants deny the remaining allegations in Paragraph 5 of the Complaint.

6. Plaintiff UNC Health, Defendant Humana Health Plan, Inc., and Defendant Humana Insurance Company are parties to that certain Hospital Participation Agreement ("UNC Health Systems Agreement") effective as of September 1, 2021, together with any amendments thereto. As between the contracting parties, the UNC Health System Agreement governs all claims for services rendered at any UNC Health facilities

3

enumerated therein—whether owned or managed by UNC Health—on or after September 1, 2021.[1]

> **ANSWER**: Defendants admit the allegations in the first sentence of Paragraph 6. The UNC Health Systems Agreement speaks for itself. Except as admitted, the Defendants deny the allegations of Paragraph 6.

7.    Plaintiff UNC Hospitals and Defendant Health Value Management, Inc. d/b/a ChoiceCare Network were parties to that certain Hospital Participation Agreement ("UNC Hospitals Agreement") effective as of April 15, 2002, together with any amendments thereto, including, without limitation, the amendment effective on or about May 17, 2005 and the amendment effective on or about December 1, 2010. The UNC Hospitals Agreement remained in effect through September 1, 2021, at which point it was superseded by the UNC Health System Agreement. As between the contracting parties, the UNC Hospitals Agreement governs all claims for services rendered at any UNC Hospitals facilities enumerated therein from April 15, 2002 to August 31, 2021.

> **ANSWER**: Defendants admit that they had a contractual relationship with Plaintiff UNC Hospitals prior to the September 1, 2021 formation of the currently operative Agreement. The terms of that relationship are defined by the documented agreement between the parties, the contents of which agreement speak for themselves. Except as admitted, the allegations of paragraph 7 are denied.

---

[1] Any facilities which affiliated with UNC Health after September 1, 2021 could be brought under the UNC Health System Agreement upon mutual written agreement of the contracting parties.

4

8.     UNC Health Nash and Defendant Health Value Management, Inc. d/b/a ChoiceCare Network were parties to that certain Hospital Participation Agreement ("UNC Health Nash Agreement") effective on or about January 1, 2007, together with any amendments thereto. The UNC Health Nash Agreement remained in effect through September 1, 2021, at which point it was superseded by the UNC Health System Agreement.

> **ANSWER**: Defendants admit that they had a contractual relationship with Plaintiff UNC Health Nash prior to the September 1, 2021 formation of the currently operative Agreement. The terms of that relationship are defined by the documented agreement between the parties, the contents of which agreement speak for themselves. Except as admitted, the allegations of paragraph 8 are denied.

9.     UNC Health Johnston, Defendant Humana Health Plan, Inc., and Defendant Humana Insurance Company were parties to that certain Hospital Participation Agreement ("UNC Health Johnston Agreement") effective on or about February 1, 2011, together with any amendments thereto. The UNC Health Johnston Agreement remained in effect through September 1, 2021, at which point it was superseded by the UNC Health Systems Agreement.

> **ANSWER**: Defendants admit that they had a contractual relationship with Plaintiff UNC Health Johnston prior to the September 1, 2021 formation of the currently operative Agreement. The terms of that relationship are defined by the documented

5

agreement between the parties, the contents of which agreement speak for themselves. Except as admitted, the allegations of paragraph 5 are denied.

10.     This Complaint concerns only those claims payable:

  a. under the UNC Hospitals Agreement from January 1, 2018 through August 31, 2021; and

  b. under the UNC Health Systems Agreement on or after September 1, 2021.

**ANSWER**: Defendants are without knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and, therefore, deny those allegations.

11.     The UNC Hospitals Agreement and the UNC Health System Agreement are collectively referred to herein as the "Agreement."

**ANSWER**: Paragraph 6 serves only to define terms and does not require a response. To the extent any response is required, Defendants deny any allegations in Paragraph 11.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

6

**ANSWER**: Defendants admit that this Court has subject matter jurisdiction of this action. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 of the Complaint and therefore deny those allegations.

13.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

**ANSWER**: Defendants admit that venue is proper in this judicial district. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 of the Complaint and therefore deny those allegations.

14.     Defendant is subject to this Court's specific jurisdiction because the causes of action herein arise directly from Defendant's purposeful contacts relating to Plaintiff in North Carolina.

**ANSWER**: Defendants admit that they are subject to this Court's personal jurisdiction. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 of the Complaint and therefore deny those allegations.

15.    Defendant is subject to this Court's general personal jurisdiction because it is constructively "at home" because of continuous and systematic contacts in this State with respect to Plaintiff.

**ANSWER**: The allegations in Paragraph 15 are denied.


16.    Defendant maintains a North Carolina registered agent for service of process.

**ANSWER**: Defendants admit that Humana Health Plan, Inc. maintains a North Carolina registered agent. The remaining allegations in Paragraph 16 are denied.


## FACTUAL BACKGROUND

17.    As an alternative to traditional Medicare, eligible individuals may instead elect to enroll in "Medicare Advantage," also known as Medicare Part C. Medicare Advantage is a Medicare-approved plan administered by a private company—known as a Medicare Advantage Organization ("MAO")—that provides health and drug coverage to such individuals on behalf of the Centers for Medicare and Medicaid Services ("CMS").

**ANSWER**: In response to Paragraph 17 of the Complaint, Defendants state that "[t]he Part C program of Medicare was renamed the Medicare Advantage (MA) Program pursuant to Title II of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA") (Public Law 108-173), which was enacted on December 8, 2003. The MMA updated and improved the choice of plans for beneficiaries under MA, and changed the way benefits are established, and payments are made. Under the MMA, beneficiaries may choose from additional

8

plan options, including regional PPO ("RPPO") plans and special need plans ("SNPs")." See Medicare Managed Care Manual § 10. Defendants otherwise deny the remaining allegations in Paragraph 17.

18.     Defendant serves as an MAO pursuant to a contract it maintains with CMS (Defendant's "MAO Agreement").

**ANSWER**: In response to Paragraph 18 of the Complaint, Defendants admit that they are Medicare Advantage Organizations or MAOs that contract with CMS to provide Medicare benefits to Medicare beneficiaries who enroll in the Medicare Advantage plans that Defendants sponsor. Defendants otherwise deny the remaining allegations in Paragraph 18.

19.     As an MAO, Defendant maintains various Medicare Advantage plans, through which Defendant administers Medicare benefits on behalf of CMS to individuals who have elected to enroll in such plans in lieu of enrolling in traditional Medicare (Defendant's "Medicare Advantage Program").

**ANSWER**: Defendants admit that they are MAOs that contract with CMS to administer Medicare benefits to Medicare beneficiaries who enroll in the Medicare Advantage plans that they sponsor. Otherwise, the allegations in Paragraph 19 are denied.

20. Providers such as Plaintiff provide health care services to members of Defendant's network—including individuals enrolled in Defendant's Medicare Advantage Program—through provider agreements such as the Agreement.

**ANSWER**: The Agreement speaks for itself and, to the extent the allegations in Paragraph 20 conflict with the Agreement, those allegations are denied.

21. As an MAO, Defendant is obligated to pay contracted providers, such as Plaintiff, the rates agreed to in the Agreement.

**ANSWER**: Defendants admit that they contract with healthcare providers who provide services to members of Medicare Advantage plans, which typically include reimbursement terms for the services provided. Otherwise, the Agreement speaks for itself and, to the extent the allegations in Paragraph 21 conflict with the Agreement, those allegations are denied.

22. However, from 2018 through 2022, during the Agreement's applicability (the "Improper Discount Period"), Defendant improperly and unilaterally discounted payments for certain of Plaintiff's claims at its covered hospitals.

**ANSWER**: The allegations in Paragraph 22 are denied.

23. Defendant thus owes Plaintiff for underpayments under the Medicare Advantage Program during the Improper Discount Period.

**ANSWER**: The allegations in Paragraph 23 are denied.

10

24.     Specifically, the claims at issue fall within an identical pattern in that they are claims for pharmaceuticals that were purchased under the federal 340B drug purchasing program (the "340B Program").

**ANSWER**: Defendants lack sufficient information to respond to the allegations in Paragraph 24 and therefore deny the same.

25.     Under the 340B Program, claims for certain pharmaceuticals are reimbursed under the Medicare program at a rate of the average sales price ("ASP") plus 6%.

**ANSWER**: Defendants state that the Medicare Act, the 340B Program, and related regulations speak for themselves. Otherwise denied.

26.     Under the Agreement, Defendant is required to reimburse Plaintiff for outpatient services, including pharmaceuticals purchased under the 340B Program and used in a hospital outpatient department, as a percentage of the rate required to be paid under the Medicare program.

**ANSWER**: The Agreement speaks for itself and, to the extent the allegations in Paragraph 26 conflict with the Agreement, those allegations are denied.

27.     During the Improper Discount Program, however, Defendant improperly reimbursed Plaintiff for these claims predicated on ASP minus 22.5% (the "Improper Payment Reduction") instead of ASP plus 6%.

**ANSWER**: The allegations in Paragraph 27 are denied.

28.     As such, Defendant has systematically underpaid Plaintiff in violation of the Agreement.

**ANSWER**: The allegations in Paragraph 28 are denied.

29.     During the Improper Discount Period, Defendant applied the Improper Payment Reduction to Plaintiff's reimbursement for 340B drugs under the following faulty rationales: (a) Defendant assumed that CMS properly applied the same Improper Payment Reduction in the fee-for-service Medicare program; and (b) Defendant thus incorrectly believed it could likewise impose the Improper Payment Reduction under the Agreement's terms.

**ANSWER**: The allegations in Paragraph 29 are denied.

30.     However, CMS's imposition of the Improper Payment Reduction was determined to be unlawful. On June 15, 2022, the United States Supreme Court unanimously held that CMS never had the authority to impose the Improper Payment Reduction under the Medicare program. *See Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 142 S. Ct. 1896 (2022).

**ANSWER**: Defendants state that the United States Supreme Court's decision in *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 142 S. Ct. 1896 (2022) (the "*Becerra* Decision") speaks for itself. Otherwise denied.

31.     In the aftermath of that opinion, CMS interpreted and effectuated the United

States Supreme Court's decision by rule and declared the Improper Payment Reduction to

be an "unlawful 340B Payment Policy." 88 Fed. Reg. 77150, 77152 (Nov. 8, 2023).

**ANSWER**: Defendants state that CMS regulations and the federal register,

including 88 Fed. Reg. 77150 (Nov. 8, 2023) (the "Remedy Rule"), speak for

themselves. Otherwise denied.


32.     To remedy the impact of the unlawful 340B Payment Policy under the

Medicare program, CMS elected to make a lump-sum payment to affected hospitals,

including Plaintiff, during the first quarter of 2024, equal to the difference between (i) what

they were actually paid due to the Improper Payment Reduction during the Improper

Discount Period, and (ii) what they would have been paid had the Improper Payment

Reduction not been applied during the Improper Discount Period (i.e., ASP plus 6%). 88

Fed. Reg. 77150, 77156-67 (Nov. 8, 2023).

**ANSWER**: Defendants state that CMS regulations and the federal register,

including the Remedy Rule, speak for themselves. Otherwise denied.


33.     Because Defendant's action purport to derive directly from CMS's

admittedly unauthorized actions, Defendant's actions also violate the Agreement.

**ANSWER**: The allegations in Paragraph 33 are denied.

13

34.     As a result of Defendant's improper interpretation of the Agreement, Defendant has underpaid Plaintiff for Medicare Advantage members' 340B drugs for the Improper Discount Period.

**ANSWER**: The allegations in Paragraph 34 are denied.

35.     Defendant therefore owes Plaintiff the difference between the amount that Defendant has paid Plaintiff for services rendered to Defendant's Medicare Advantage members and the amounts Defendant is contractually obligated to pay Plaintiff for such payments and services.

**ANSWER**: The allegations in Paragraph 35 are denied.

36.     Plaintiff has been damaged because of Defendant's breach and improper actions. As of the time of this Demand, Plaintiff's calculated arrearages and damages in this regard exceed $75,000.

**ANSWER**: The allegations in Paragraph 36 are denied.

## CAUSES OF ACTION

### COUNT #1
### Breach of Contract

37.     Plaintiff incorporates by reference all other allegations as if set forth fully herein.

**ANSWER**: Defendants incorporate by reference all preceding paragraphs as if fully set forth herein.

14

38.     The Agreement is an enforceable contract, through which Defendant agreed to pay Plaintiff as specified therein.

   **ANSWER**: The Agreement speaks for itself and, to the extent the allegations in Paragraph 38 conflict with the Agreement, those allegations are denied.

39.     Plaintiff has fully performed its contractual obligations to Defendant under the terms of the Agreement.

   **ANSWER**: The allegations in Paragraph 39 are denied.

40.     Defendant's failure and refusal to pay all amounts due to Plaintiff under the Agreement constitutes a breach of the Agreement.

   **ANSWER**: The allegations in Paragraph 40 are denied.

41.     Plaintiff has suffered damages exceeding $75,000 as a direct and proximate result of Defendant's breach of the Agreement.

   **ANSWER**: The allegations in Paragraph 41 are denied.

## COUNT #2
## Specific Performance

42.     Plaintiff incorporates by reference all other allegations as if set forth fully herein.

   **ANSWER**: Defendants incorporate by reference all preceding paragraphs as if fully set forth herein.

43.     Defendant failed to pay all amounts due Plaintiff under the Agreement, thereby breaching the Agreement, and Plaintiff is thus entitled to specific performance of those underpayments.

**ANSWER**: The allegations in Paragraph 43 are denied.


44.     Plaintiff has performed all services necessary in order to be fully paid for its services under the Agreement.

**ANSWER**: The allegations in Paragraph 44 are denied.


45.     Accordingly, Plaintiff is entitled to an order of specific performance mandating that Defendant comply with its obligations under the Agreement.

**ANSWER**: The allegations in Paragraph 45 are denied.

**COUNT #3**
**(Declaratory Judgment)**

46.     Plaintiff incorporates by reference all other allegations as if set forth fully herein.

**ANSWER**: Defendants incorporate by reference all preceding paragraphs as if fully set forth herein.


47.     This is a count for declaratory relief pursuant to Rule 57 of the North Carolina Rules of Civil Procedure and N.C. Gen. Stat. § 1-253, requiring Defendant to reimburse Plaintiff at the rates provided in the Agreement.

16

**ANSWER**: The allegations in Paragraph 47 are denied.

48.     As a direct and proximate result of Defendant's acts and omissions, including but not limited to Defendant's failure to pay Plaintiff the contractual amounts for its services, Plaintiff has sustained, and will continue to sustain, damages and has been deprived, and will continue to be deprived, of the compensation to which Plaintiff is entitled for its services rendered to Defendant's Medicare Advantage members under the Agreement.

**ANSWER**: The allegations in Paragraph 48 are denied.

49.     The existence of another potentially adequate remedy does not preclude an award for declaratory relief.

**ANSWER**: The allegations in Paragraph 49 are denied.

50.     Plaintiff is entitled to declaratory relief, including a declaration that Defendant owes Plaintiff the difference between the amount that Defendant has paid Plaintiff for services rendered to Defendant's Medicare Advantage members and the amounts Defendant is obligated to pay Plaintiff for such patients and services under the Agreement.

**ANSWER**: The allegations in Paragraph 50 are denied.

## PLAINTIFFS' PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any relief sought in the Complaint. On that basis, Defendants deny the allegations in the Prayer for Relief.

Defendants deny each and every allegation in the Complaint not specifically admitted herein.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants assert the following defenses without assuming any burdens of production, persuasion, or proof that, pursuant to law, are not legally assigned to Defendants and are Plaintiffs' burden to prove.

1. Plaintiffs' Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

2. Plaintiffs' claims are barred, in whole or in part, because they fall outside the applicable statute of limitations period, and/or are barred by the doctrine of laches, contract limitations and/or other limitations.

3. Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs failed to timely seek correction of denied, underpaid or non-paid claims under the Agreement.

4. Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver estoppel, unclean hands, and/or Plaintiffs' failure to perform its duties and responsibilities under the Agreement.

5. Defendants at no point breached any contractual duty that they owed to Plaintiffs, and Plaintiffs' claims are barred, in whole or in part, by the terms of the

18

Agreement. Defendants complied with the terms of the Agreement. There is no dispute that, as required by the Agreement, Defendants paid the relevant percentage of the Medicare rate in effect as of the date of service. Those rates have not been retroactively reset.

6.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs materially and previously breached the Agreement first, discharging Defendants' obligations.

7.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to comply with a condition precedent and/or failed to exhaust contractual remedies.

8.     Plaintiffs' claims are barred, in whole or in part, because they failed to exhaust all internal reviews and processes required by the members' plans.

9.     Plaintiffs' claims are barred, in whole or in part, because they failed to exhaust any available administrative remedies under the Medicare Act for the 340B claims at issue.

10.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of accord and satisfaction, payment, ratification and release.

11.     Plaintiffs' claims are barred, in whole or in part, because, if Plaintiffs' theory is correct, then the parties were operating under a mistake of fact and/or law as to the proper reimbursement rate under the applicable agreements.

12.     Plaintiffs' claims are barred, in whole or in part, because the Supreme Court opinion and federal regulation referred to in the Complaint do not apply to Medicare Advantage plans and thus are not applicable to this dispute.

13.     The Supreme Court opinion and federal regulation referred to in the Complaint do not create private rights of action, and Plaintiffs' attempts to enforce them in a private civil suit are inappropriate.

14.     Plaintiffs are seeking to enforce CMS-issued regulations, including the Remedy Rule, in this litigation. In addition to the Remedy Rule not applying to Medicare Advantage organizations by its express terms, there is no private right of action to enforce CMS regulations.

15.     Plaintiffs' claims for specific performance and declaratory judgment are barred because Plaintiffs are not entitled to equitable relief and any harm they suffered can be remedied by money damages, and because they are duplicative of Plaintiffs' claim for breach of contract. *Oak Grove Techs., LLC v. Seventh Dimension, LLC*, No. 2025 WL 2427649, 2025 WL 2427649, at *10 (N.C. Super. Aug. 22, 2025) (internal citation omitted) ("Many courts have previously recognized that a declaratory judgment does not serve a useful purpose where that purpose is only to resolve an already-existing breach of contract claim."); *see also Ngo v. Park*, 175 N.C. App. 420, at *5, 623 S.E.2d 369 (2006) (table decision) ("Specific performance of a contract is available only where the legal remedy is inadequate.") (citing *Whalehead Props. v. Coastland Corp.*, 299 N.C. 270, 282, 261 S.E.2d 899, 907 (1980)).

16.     Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs' damages were caused by Plaintiffs' own actions and/or failure to act, and by the fact that

20

any damages sustained by Plaintiffs were not caused by any conduct on the part of Defendants.

17.     In the event Plaintiffs have any viable claims against Defendants, which is denied, such claims are barred to the extent Plaintiffs have failed to mitigate, avoid, or minimize their alleged damages.

18.     Plaintiffs' claims, in whole or in part, are barred and/or limited by any recovery Plaintiffs and/or their insured(s) have recovered from collateral sources.

19.     Plaintiffs are not entitled to additional compensation to the extent that the relevant claims have been processed, paid, and/or denied pursuant to the terms of the applicable members' plans and/or applicable Medicare statutes, regulations, code edits, rules and coverage decisions.

20.     Plaintiffs' claims are barred, in whole or in part, to the extent that the services and drugs provided were not medically necessary.

21.     Plaintiffs' claims are barred, in whole or in part, to the extent that the claims at issue do not involve 340B drugs.

22.     Plaintiffs lack standing to pursue claims on behalf of members who did not properly assign their claims to Plaintiffs, and members whose plans prohibited assignment of claims.

23.     To the extent that there is a primary payor responsible for the amounts at issue, whether due to statute, regulation, negligence or other legal theory, Plaintiffs are not entitled to seek such amounts from Defendants, and to the extent that these amounts

21

are included in Plaintiffs' damages, such damages, if any, should be reduced by those amounts.

24.     Plaintiffs would receive an unfair windfall if they prevailed because, based upon information and belief, they and/or hospitals they operate acquired the 340B drugs in question for less than the contracted rate in the Agreement.

25.     Defendants are entitled to a set-off for any overpayments or incorrectly-processed payments to Plaintiffs for which amounts are currently owed by Plaintiffs to Defendants.

26.     Any damages award must be offset by appropriate adjustments to the conversion factor and otherwise to account for excess payments that Plaintiffs received from Defendants from January 1, 2018 through September 27, 2022 for non-340B drugs and services due to the budget neutrality requirements of the Hospital Outpatient Prospective Payment System.

27.     Plaintiffs are not entitled to seek any member cost-share obligations from Defendants pursuant to the applicable agreements, and to the extent these amounts are included in Plaintiffs' damages, such damages, if any, should be reduced by those amounts.

28.     Plaintiffs are not entitled to exemplary damages or to have fees or costs awarded to them.

29.     Plaintiffs' attempt to use state law to enforce Medicare regulations is expressly preempted under the express preemption provision of the Medicare Act, 42 U.S.C. § 1395w-26(b)(3), and impliedly preempted under the Act. Plaintiffs' attempts to

force MAOs to implement CMS's one-time payment remedy also would conflict with the Medicare Act's non-interference provision, 42 U.S.C. § 1395w-24(a)(6)(B)(iii), which prohibits CMS from dictating to MAOs that they use "a particular price structure for payment" to a contracted provider.

30.     Plaintiffs' attempt to force MAOs to make one-time payments for 340B drug claims would conflict with CMS' Medicare Advantage rate setting and payment policy process. CMS sets rates paid to MAOs prospectively each year as part of a complex bid process that takes place during June of the year preceding when the relevant plans will go into effect. There is no opportunity for MAOs to go back and re-open prior bids for plan years 2018-2022 to seek to reprice their services to account for higher 340B rates that were not actually in effect at the relevant time. Therefore, requiring MAOs to make the same one-time payments would force MAOs to retroactively assume financial risk inconsistent with the complex rate setting and payment process established to govern the Medicare Advantage program.

31.     Defendants have insufficient knowledge or information upon which to form a belief as to whether they may have additional, as yet unstated, defenses available, and Defendants reserve the right to assert such additional defenses in the event that discovery, investigation, or analysis indicate the need for the additional defenses.

## JURY DEMAND

Defendants demand trial by jury as to all issues so properly tried in this case.

## DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, Defendants pray that judgment be entered in favor of Defendants

and against Plaintiffs and that the Complaint be dismissed with prejudice, together with costs and interest, and that Defendants be granted such further relief and other relief as the Court deems just and proper.

This 31st day of October 2025.


By: */s/ Bradley A. Roehrenbeck*
Chad D. Hansen (NC Bar No. 32713)
Bradley A. Roehrenbeck (N.C. Bar No. 34180)
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
chadhansen@ktslaw.com
broehrenbeck@ktslaw.com@ktslaw.com

*Attorneys for Defendants Humana Health Plan, Inc.,
Humana Insurance Company, and Health Value
Management, Inc. d/b/a ChoiceCare Network*

24

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he electronically filed the foregoing

Answer with the Clerk of Court using the CM/ECF system which will send notification of

such filing to all counsel of record.

This the 31st day of October, 2025.

By: */s/ Bradley A. Roehrenbeck*
    Chad D. Hansen (NC Bar No. 32713)
    Bradley A. Roehrenbeck (N.C. Bar No. 34180)
    KILPATRICK TOWNSEND & STOCKTON LLP
    1001 West Fourth Street
    Winston-Salem, NC 27101
    Telephone:  (336) 607-7300
    Facsimile:  (336) 607-7500
    chadhansen@ktslaw.com
    broehrenbeck@ktslaw.com

*Attorneys for Defendants Humana Health Plan, Inc.,*
*Humana Insurance Company, and Health Value*
*Management, Inc. d/b/a ChoiceCare Network*